No. 104,200

In the Matter of CARLOS DUPREE ROMIOUS, A/K/A D. CARLOS ROMIOUS, *Respondent*.

(240 P.3d 945)

Opinion filed October 8, 2010.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause, and *Frank D. Diehl*, deputy disciplinary administrator, was with him on the formal complaint for petitioner.

No appearance by respondent.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Carlos Dupree Romious, a/k/a D. Carlos Romious, of Kansas City, Missouri, an attorney admitted to the practice of law in Kansas in 1997.

On September 11, 2009, the office of the Disciplinary Administrator filed a formal complaint against the respondent, alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent failed to file an answer to the formal complaint. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on November 18, 2009. The respondent failed to appear at this hearing; however, he requested a continuance on the evening of November 17, 2009, by email to a special investigator for the Disciplinary Administrator, saying he was out of the state and could not afford to travel to Kansas. The hearing panel found that the respondent did not submit a timely request for a continuance and that good cause did not exist for a continuance.

The hearing panel determined that respondent violated KRPC 1.1 (2009 Kan. Ct. R. Annot. 410) (competence); 1.5(a) (2009 Kan. Ct. R. Annot. 460) (fees); 3.4(c) (2009 Kan. Ct. R. Annot. 552) (fairness to opposing party and counsel); 3.5(d) (2009 Kan. Ct. R. Annot. 558) (engaging in undignified or discourteous conduct degrading to a tribunal); 4.4(a) (2009 Kan. Ct. R. Annot. 572) (respect for rights of third persons); 8.4(b) (2009 Kan. Ct. R. Annot. 602)

(commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer); 8.4(c) (engaging in conduct involving misrepresentation); 8.4(d) (engaging in conduct prejudicial to the administration of justice); 8.4(g) (engaging in conduct adversely reflecting on lawyer's fitness to practice law); and Kansas Supreme Court Rule 211(b) (2009 Kan. Ct. R. Annot. 321) (failure to file answer in disciplinary proceeding). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

"2. On October 8, 2008, the Kansas Supreme Court suspended the Respondent's license to practice law for failing to comply with the annual administrative requirements to maintain a law license. The Respondent's license remains suspended.

### "Count I DA10509
### "Municipal Court of Shawnee, Kansas, Conduct

"3. The Respondent represented Christopher D. Falkner in a traffic case pending in the Shawnee, Kansas, Municipal Court, case number T08197971.

"4. On April 16, 2008, after the docket had been concluded in the Municipal Court of Shawnee, Kansas, the Respondent approached the Municipal Court Clerk's window and demanded to see the prosecutor, Joshua Allen. The Respondent told the clerk to tell the prosecutor to get his 'ass' in the courtroom.

"5. Mr. Allen met with the Respondent in the courtroom. After the meeting, the Respondent returned to the Municipal Court Clerk's window. Despite the fact that the clerks were already assisting the Respondent, the Respondent repeatedly rang the service door bell.

"6. On April 21, 2008, the Respondent returned to the Municipal Court of Shawnee, Kansas. The Respondent told the clerk that he wanted to 'fucking' file his paperwork. The Respondent presented a pleading entitled, 'Defendant's Application for Change of Judge' in Mr. Falkner's case. Tammy Manthei, clerk, told the Respondent that the clerks were working on it.

"7. The Respondent called Ms. Manthei a 'fucking bitch.' The Respondent pointed his finger at Ms. Manthei, hitting the glass. The Respondent told Ms. Manthei that she better do what he told her to do. The Respondent proceeded to tell Ms. Manthei that he is smarter than anyone in the clerk's office. The Respondent repeatedly pointed at the clerks, calling them 'fucking bitches.' The Respondent told Ms. Manthei to get her 'ass' in there to get his signed motion. Ms. Manthei testified she had never experienced conduct like the Respondent's in her eight years in the municipal court office. As a result of the Respondent's conduct, someone from the clerk's office telephoned the police department. The

police did not arrive until the time when the Respondent was driving away in his vehicle.

"8. The Defendant's Application for Change of Judge contained several defects. First, the Respondent failed to include any reason for the Judge to recuse himself. Second, despite the fact that the application was being made in behalf of Mr. Falkner, the affidavit was titled 'Affidavit of Defendant Jonathan Johnson.' Finally, while the affidavit indicates that it was subscribed and sworn to before a Notary Public, there is no signature line nor a signature from a Notary Public.

"9. The judge summarily denied the Defendant's Application for Change of Judge filed by the Respondent.

"10. As a result of the Respondent's conduct in the Municipal Court, on May 1, 2008, the Johnson County District Attorney's office charged the Respondent with disorderly conduct. During the pendency of the case, the Respondent failed to appear in court as ordered on three occasions. The Respondent failed to appear May 16, 2008, and April 10, 2009. In October, 2009, Ms. Manthei and other witnesses appeared in court for trial. The Respondent, however, failed to appear. The trial was continued to November 25, 2009. [Footnote: According to the Johnson County District Court website, on November 25, 2009, an attorney appeared in behalf of the Respondent. The attorney entered a plea of guilty in behalf of the Respondent. The court sentenced the Respondent to serve four days in the county jail. The Respondent received credit for time served and the case was closed.]

"Count II DA10509<br>"Federal Court Conduct

"11. On May 6, 2008, the Respondent entered the north door of the United States Courthouse at 500 State Avenue, Kansas City, Kansas. At a station manned by court security officers inside the doorway, the Respondent removed items from his pockets, placed the items in a tray, and walked through the magnetometer. The alarm on the magnetometer sounded.

"12. A court security officer told the Respondent to return to the entry side of the magnetometer, remove his wristwatch, and walk through the magnetometer again. The Respondent refused. The Respondent became very loud and began using profane language to the court security officers.

"13. The court security officers repeatedly told the Respondent to return to the entry side of the magnetometer or leave the building. The Respondent continued to refuse[] to comply and began shouting profanities at the court security officers. Despite the fact that the Respondent had not been cleared by the court security officers, the Respondent started walking toward the elevators. The court security officers told the Respondent to stop and to return to the entry side of the magnetometer. The Respondent did not stop. The court security officers repeated in a louder voice that the Respondent should stop and return to the security area. The Respondent stopped walking toward the elevators but continued using profane language toward the court security officers.

"14. The court security officers called the United States Marshal's Office for assistance. Several Deputy United States Marshals responded, including Deputy Marshal Sean Franklin.

"15. Deputy Marshal Franklin told the Respondent to leave the courthouse. The Respondent refused to do so. The Respondent told Deputy Marshal Franklin that he would have to move him. Deputy Marshal Franklin put a hand on the Respondent and the Respondent shoved Deputy Marshal Franklin. Deputy Marshal Franklin took the Respondent to the floor. The struggle between Deputy Marshal Franklin and the Respondent continued, knocking over the magnetometer and going through a set of doors. Eventually, the Respondent was placed under arrest. Deputy Marshal Franklin received minor injuries in the incident.

"16. On May 14, 2008, a grand jury of the United States District Court for the District of Kansas indicted the Respondent in case number 08-20056CM in a three count complaint with (1) failing to comply with official signs of a prohibitory, regulatory, and directory nature and with the lawful direction of Federal police officer, (2) exhibiting disorderly conduct that created loud and unusual noise and a nuisance and unreasonably obstructed the use of an entrance, foyer, and lobby of the United States Courthouse, and (3) resisting, opposing, impeding, and interfering with Sean Franklin and Steve Makarunis in the performance of their official duties. The first two charges were misdemeanors and the third charge was a felony.

"17. On December 18, 2008, the Respondent entered into a plea agreement. Pursuant to the plea agreement, the Respondent entered a plea of guilty to count one of the indictment. The Court sentenced the Respondent to 30 days and gave credit to the Respondent for time served.

"Count III DA10520
"Representation of Alta V. Vaughn, Sr.

"18. The Respondent represented Alta V. Vaughn, Sr. in the Circuit Court of Green County, Missouri, case number 31106CF0085. During the period of representation, the Respondent engaged in abusive and bizarre behavior.

"19. On April 24, 2008, the Respondent was in a Green County, Missouri, courtroom. During a hearing on a motion to suppress in a case which the Respondent was not involved, the Respondent loudly and rudely interrupted the proceeding. The Respondent accused the court of having a pattern and history of scheduling the Respondent's cases at the end of the docket.

"20. On June 16, 2008, June 17, 2008, and June 18, 2008, the court in Green County, Missouri held a pre-hearing conference in the Vaughn case. Throughout the hearing, the Respondent made loud and rude statements.

"21. On June 16, 2008, the Respondent asserted that the proceeding was a 'joke' and a 'travesty.' The Respondent accused the judge of 'apparent reckless, bias, prejudice, and potentially racist activity and conduct.' The Respondent told the judge that the 'proceeding was a joke' and that the judge was 'going to sit [his] ass up there.' The Respondent accused the court of 'corrupting and stinking up

the case' and 'corrupting the system.' Finally, during the hearing on June 16, 2008, the Respondent repeatedly spoke over the judge and opposing counsel in a loud, rude, and angry manner. The Respondent refused to stop talking when so ordered by the judge.

"22. On June 17, 2008, the Respondent accused the court of 'being anything but impartial, justiciable, and anything but incompetent.' The Respondent wadded up a copy of a pleading filed by opposing counsel, threw it to the floor, and, using his shoe, ground it into the floor. When the court ordered the Respondent to appear the following morning at 8:00 a.m., the Respondent refused to appear. The Respondent told the court 'to not expect him to be here' and that he should not 'hold [his] breath.' Again, the Respondent repeatedly spoke over the judge and opposing counsel in a loud, rude, and angry manner. Again, the Respondent refused to stop talking when ordered to stop by the court.

"23. The hearing resumed on June 18, 2009, and the Respondent did appear. During that hearing, the Respondent asked the court whether he is a 'pedophile.' The Respondent also stated to the court that 'you're going to sit up there with the audacity and the smugness of your holiness.' Finally, and again, the Respondent repeatedly spoke over the judge and opposing counsel in a loud, rude, and angry manner. The Respondent, again, refused to stop talking over the judge and opposing counsel when ordered to do so by the court.

"24. As a result of the Respondent's conduct on June 16, 2008, June 17, 2008, and June 18, 2008, the court held the Respondent in contempt and sentenced the Respondent to serve 120 days in jail. The Respondent served the entire sentence. (There was no direct testimony on this incident at the hearing. However, Disciplinary Administrator's Exhibit 9, Judgment of Contempt and Disciplinary Administrator's Exhibit 14, letter from the Respondent to Nancy Wilson, dated April 6, 2009, wherein the Respondent admits engaging in complained of conduct, provide the factual basis for this count.)

"Count IV DA10529

"Representation of [J.J.]

"25. The Respondent was a captain in the Kansas Army National Guard. As a result, from time to time, the Respondent would be appointed to represent soldiers with regard to military offenses.

"26. In the fall of 2007, [J.J.] was charged in a two count complaint in the District Court of Johnson County, Kansas, case number . . . . The charges were driving under the influence of alcohol and possession of drugs, both misdemeanors. [J.J.] was a soldier with the Kansas Army National Guard.

"27. [J.J.], with help from his mother and step-father, hired J. Steven Neighbors to represent him in the criminal case. [J.J.]'s mother paid Mr. Neighbors $1,500.00 for the representation in the criminal case. Mr. Neighbors is a very experienced criminal law attorney.

"28. With regard to military action that could have been taken against [J.J.], as a result of the criminal charges, [J.J.] requested that a Judge Advocate General

be appointed to defend him. As a result, the Respondent was appointed to represent [J.J.] with regard to any military action taken against him. The Respondent was not appointed to represent [J.J.] in the pending criminal case in the District Court of Johnson County, Kansas.

"29. At some point, [J.J.]'s mother talked with the Respondent about having a meeting with the family, Mr. Neighbors, and the Respondent to make sure that everyone understood what was happening with regard to [J.J.]'s future.

"30. Mr. Neighbors negotiated a plea agreement. Pursuant to the plea agreement, the Respondent was to enter a plea of guilty to the driving under the influence of alcohol charge and in return, the prosecutor would dismiss the possession of drugs charge. The plea agreement was satisfactory to [J.J.], his mother, his step-father, and his father.

"31. The Respondent was to enter his plea of guilty to the driving under the influence of alcohol charge on April 11, 2008, at 1:30 p.m.

"32. An hour before the hearing, [J.J.] and his parents were to meet with the Respondent about [J.J.]'s future. [J.J.] and his parents were present, but the Respondent was not. Instead, the Respondent sent his wife to tell [J.J.] and his parents that he was on his way.

"33. When the Respondent arrived for the meeting, it was just minutes before the plea hearing was to occur. The Respondent informed Mr. Neighbors, [J.J.], and [J.J.]'s parents that he was going to take over the criminal case.

"34. In fact, unbeknownst to [J.J.] and his parents, the Respondent filed an entry of appearance in the criminal case at 11:30 a.m. that morning. Neither [J.J.] nor his parents had retained the Respondent, nor had they discharged Mr. Neighbors.

"35. The Respondent promised [J.J.] and his parents that he would obtain a dismissal of the pending charges. [J.J.] was uncertain as to how he should proceed. He was prepared to enter a plea of guilty to the driving under the influence of alcohol charge negotiated by Mr. Neighbors. However, the guarantee of having the charges dismissed was compelling. As a result, under a great deal of stress and anxiety caused by the Respondent, [J.J.] agreed to have the Respondent represent him.

"36. Orally, the Respondent and [J.J.] agreed to a flat fee of $3,500.00. [J.J.]'s mother paid the Respondent the $3,500.00 for the representation.

"37. At the hearing, Mr. Neighbors was allowed to withdraw and the Respondent was recognized as [J.J.]'s attorney. At the Respondent's request, the case was continued to May 1, 2008.

"38. On April 21, 2008, the Respondent filed 'Defendant's Affidavit in Support of Defendant's Application for Change of Judge.' The document purports to have been signed by [J.J.]. However, [J.J.] did not sign the affidavit.

"39. The Respondent, in his representation of [J.J.] with regard to the potential military action, was abusive and arrogant in his dealings with [J.J.]'s chain of command.

"40. One night, the Respondent made arrangements to meet [J.J.] at a McDonald's Restaurant in Independence, Missouri, at 11:30 p.m. The Respondent got into [J.J.]'s car and handed him papers to review and sign. One of the documents that the Respondent handed to him was a written fee agreement. The written fee agreement indicated that the Respondent's hourly rate is $3,500.00. The Respondent sought payment of $13,250.00 as a 'liquidated fee.' The Respondent directed [J.J.] to drive him to the Respondent's wife's place of employment in downtown Kansas City, Missouri, to pick up his car.

"41. [J.J.] was uncomfortable with the very unusual late night meeting with the Respondent. According to [J.J.] the meeting 'seemed like a drug deal.'

"42. Regarding the $13,250 liquidated fee, [J.J.] told the Respondent that he did not have 'that kind of money.' The Respondent assured [J.J.] that the fee was negotiable. Subsequently, [J.J.] terminated the representation of the Respondent and requested that the $3,500.00 be returned. The Respondent never returned the $3,500.00. The Respondent threatened to sue [J.J.].

"43. [J.J.] and his parents believe that the Respondent's treatment of [J.J.]'s chain of command negatively impacted [J.J.]'s military career. As a result of [J.J.]'s criminal case and the Respondent's treatment of [J.J.]'s chain of command, [J.J.] received a general discharge from the Kansas Army National Guard. [J.J.]'s family had a long and proud history of military service. The Respondent's conduct which materially contributed to [J.J.]'s discharge was emotionally devastating to [J.J.] and his family.

"44. When an army JAG attorney is appointed to represent a soldier in a military setting, pursuant to Army regulations, the JAG attorney is prohibited from representing that same soldier in a civilian setting if a fee is charged.

"45. Other than entering his appearance, continuing the April 11, 2008, hearing, and filing the Defendant's Affidavit in Support of Defendant's Application for Change of Judge, the Respondent did nothing to earn the $3,500.00 fee.

"Count V DA10529
"Municipal Court of Grandview, Missouri

"46. On June 2, 2008, the Respondent appeared in behalf of a client at the Municipal Court of Grandview, Missouri. While court was in session, the Respondent was speaking in a loud voice and disrupted the court session. Mike Smith, the court bailiff asked the Respondent to move to an area that was made available for attorneys to meet with their clients and the court bailiff also asked the Respondent to keep his voice down.

"47. The Respondent began yelling at Mike Smith, telling him to get out of his face and that he can stand wherever he wanted to stand. A court security officer, Greg Smith, came to where the Respondent was making the commotion and escorted the Respondent to the courtroom.

"48. The Respondent continued to speak in a loud voice. Because he was disrupting court, Greg Smith escorted the Respondent to the bench. The Respondent stated that the Grandview Municipal Court is a 'kangaroo court.' The Re-

spondent started turning his hands around yelling, 'I'm Carlos Romious and I'm an attorney and I'm being treated unfairly in this courtroom.' As a result of the Respondent's disruptive behavior, the municipal court judge held the Respondent in contempt of court.

"49. Greg Smith placed the Respondent under arrest and escorted him to the detention area. The Respondent's client observed Greg Smith escort the Respondent from the courtroom. Greg Smith heard the Respondent's client state, 'That's my attorney and I don't want to have anything to do with him.'

"50. While the Respondent was being detained, the Respondent called Greg Smith a snake. The Respondent stated that 'all you guys in Grandview you are all snakes, that's all you all are.'

"51. Approximately fifteen minutes later, the judge called the Respondent back from the detention area. The judge admonished the Respondent to behave professionally in the courtroom and released him from custody.

"52. Two days later, Greg Smith observed the Respondent in the Grandview Municipal Court again. When the Respondent noticed Greg Smith, the Respondent started yelling at him. The Respondent yelled, 'I'm back in Grandview. All the snakes are back again.' The Respondent continued to scream that everyone was a snake and that Grandview is full of snakes.

## "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.5, KRPC 3.4, KRPC 3.5, KRPC 4.4, KRPC 8.4, and Kan. Sup. Ct. R. 211, as detailed below.

"2. The Respondent failed to appear at the hearing on the Formal Complaint. It is appropriate to proceed to hearing when a Respondent fails to appear only if proper service was obtained. Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a) Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.

. . . .

'(c) Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the Disciplinary Administrator complied with Kan. Sup. Ct. R. 215(a) by sending a copy of the Formal Complaint and the Notice of Hearing, *via* certified United States mail, postage prepaid, to the address shown on the Respondent's most recent registration. Additionally, the Disciplinary Administrator sent a copy of the Formal Complaint and the Notice of Hearing to several other addresses. Finally, it appears that actual service was obtained as the Respondent sent an electronic mail message acknowledging the hearing. The Hearing Panel concludes that the Respondent was afforded the notice that the Kansas Supreme Court Rules require.

"3. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' In representing [J.J.] in the Johnson County District Court matter, the Respondent lacked reasonable competence. He filed a motion seeking the recusal of a judge without making any factual allegations. Because the Respondent was incompetent in representing [J.J.], the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"4. According to KRPC 1.5(a), '[a] lawyer's fee shall be reasonable.' The Respondent orally agreed to represent [J.J.] in the criminal case for a flat fee of $3,500.00. While that fee was more than double the fee Mr. Neighbors' charged [J.J.] for the same representation, that fee was not *per se* unreasonable. However, later in the representation, the Respondent attempted to change the fee agreement from a flat fee of $3,500.00 to an hourly rate of $3,500.00. An hourly rate of $3,500.00 is unreasonable.

"5. KRPC 8.4(a) prohibits attorneys from violating or attempting to violate the Kansas Rules of Professional Conduct. By attempting to charge [J.J.] $3,500.00 per hour, the Respondent attempted to violate KRPC 1.5. As such, the Hearing Panel concludes that by virtue of KRPC 8.4(a), the Respondent violated KRPC 1.5.

"6. Pursuant to KRPC 3.4(c), lawyers shall not 'knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.' In this case, the Respondent knowingly disobeyed an obligation under the rules of a tribunal when he engaged in contemptuous conduct in the Circuit Court of Green County, Missouri, and Grandview Municipal Court. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.4(c).

"7. KRPC 3.5(d) prohibits lawyers from 'engag[ing] in undignified and discourteous conduct degrading to a tribunal.' The Respondent repeatedly engaged in undignified and discourteous conduct degrading to a tribunal in the Circuit Court of Green County, Missouri, and Grandview Municipal Court. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 3.5(d).

"8. KRPC 4.4(a) provides:

'In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.'

In this case, the Respondent shouted profanities at the clerks of Shawnee, Kansas, Municipal Court and at the court security officers and the United States Deputy Marshals. In addition, the Respondent was rude and disruptive in the Circuit Court of Green County, Missouri, and the Grandview, Missouri, Municipal Court. The Respondent's conduct had no substantial purpose other than to embarrass or burden court personnel. As such, the Hearing Panel concludes that the Respondent violated KRPC 4.4(a).

"9. 'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the Respondent engaged in criminal conduct at the Municipal Court of Shawnee, Kansas, and in the federal courthouse. As a result, the Respondent was convicted of disorderly conduct in the Johnson County District Court and was convicted of failing to comply with official signs of a prohibitory, regulatory, and directory nature and with the lawful direction of a federal police officer in the United States District Court for the District of Kansas. The Hearing Panel concludes that the Respondent committed criminal acts and those criminal acts reflect directly on the Respondent's fitness as a lawyer in other respects, in violation of KRPC 8.4(b).

"10. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he drafted the fee agreement and asserted that [J.J.] agreed to pay $3,500.00 per hour rather than $3,500.00 as a flat fee. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

"11. 'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In this case, the Respondent engaged in 'conduct that is prejudicial to the administration of justice' when he disturbed the peace of the Shawnee, Kansas, Municipal Court clerk's office, when he created the disturbance at the federal courthouse, when he disrupted court in the Circuit Court of Green County, Missouri, when he entered his appearance in behalf of [J.J.] without authorization, and when he disrupted court in Grandview Municipal Court. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

"12. 'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law. KRPC 8.4(g). The Respondent repeatedly violated KRPC 8.4(g).

"13. First, shouting profanities while in the Shawnee, Kansas, Municipal Court clerk's office adversely reflects on the Respondent's fitness to practice law.

"14. Next, the Respondent's conduct at the federal courthouse adversely reflects on his fitness to practice law. Specifically, the Respondent was unwilling to remove his watch and walk back through the magnetometer. The Respondent shouted profanities at the court security officers and the United States Deputy Marshals. The Respondent attempted to gain entrance to the federal courthouse without security clearance. Finally, refusing to leave the building and instead, engaging in a brawl with the United States Deputy Marshals adversely reflects on the Respondent's fitness to practice law.

"15. Generally, the Respondent's conduct in the Circuit Court of Green County, Missouri, adversely reflects on the Respondent's fitness to practice law. Specifically, accusing the judge in the Circuit Court of Green County, Missouri, of being a pedophile also adversely reflects on his fitness to practice law.

"16. Without being retained to represent [J.J.] in the criminal case, the Respondent entered his appearance. The Respondent's conduct in inserting himself in [J.J.]'s criminal case pending before the Johnson County District Court adversely reflects on the Respondent's fitness to practice law. Further, the Respondent engaged in conduct that adversely reflects on his fitness to practice law when he failed to return the unearned fees of $3,500.00 to [J.J.] or [J.J.]'s mother.

"17. The Respondent engaged in disruptive behavior while in the Municipal Court of Grandview, Missouri. The Respondent's conduct in that court also reflects adversely on the Respondent's fitness as an attorney.

"[18.] In summary, the Respondent's conduct resulted in two criminal convictions, a contempt adjudication that led to 120 days in jail, minor injuries to a United States Marshal, and an adverse impact on a military career. The Respondent's treatment of court staff and the judiciary was far below any acceptable standard. The Respondent's conduct caused a negative public perception of the legal profession. Finally, the Hearing Panel cannot ascribe any good cause, justifiable reason or mitigating factor to the Respondent's conduct in this case.

"19. Accordingly, the Respondent repeatedly engaged in conduct that adversely reflects on his fitness to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g).

"20. The Kansas Supreme Court Rules require attorneys to file Answers to Formal Complaints. Kan. Sup. Ct. R. 211(b) provides the requirements:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a written Answer to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duties to his clients, to the public, to the legal system, and to the legal profession.

"*Mental State.* The Respondent knowingly violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to his client and to the legal system.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses*. On May 9, 2001, the Respondent was informally admonished for having violated KRPC 1.1 and KRPC 1.3.

"*A Pattern of Misconduct*. The Respondent engaged in a consistent pattern of rude, disruptive, and at times criminal, misconduct.

"*Multiple Offenses*. The Respondent violated KRPC 1.1, KRPC 1.5, KRPC 3.4, KRPC 3.5, KRPC 4.4, KRPC 8.4, and Kan. Sup. Ct. R. 211. As such, the Hearing Panel concludes that the Respondent committed multiple offenses.

"*Refusal to Acknowledge the Wrongful Nature of his Conduct*. To a very limited extent, the Respondent acknowledged wrongful conduct in Disciplinary Administrator Exhibit 14.

"*Indifference to Making Restitution*. To date, the Respondent has not reimbursed [J.J.]'s mother for the $3,500.00 that she paid for the representation. [J.J.] and his mother made a claim with the Client Protection Fund and, as a result, received $3,500.00 from the fund. The Respondent should be required to reimburse the Client Protection Fund $3,500.00.

"*Illegal Conduct, Including that Involving the Use of Controlled Substances*. The Respondent was convicted of disorderly conduct and failing to comply with official signs of a prohibitory, regulatory, and directory nature and with the lawful direction of a federal police officer. Thus, the Respondent engaged in illegal conduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found no mitigating circumstances present.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

'6.21 Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party, or causes serious or potentially serious interference with a legal proceeding.

'7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.'

## "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be disbarred. The Disciplinary Administrator stated that had the Respondent filed an

Answer or otherwise participated in the process, indefinite suspension might have been an appropriate recommendation.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be disbarred.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

The Hearing Panel also noted that it would have also concluded respondent violated KRPC 1.15 and KRPC 1.16, for failing to refund the unearned fee to J.J. or his mother, had violations of those rules not been alleged.

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2009 Kan. Ct. R. Annot. 321). Clear and convincing evidence is "evidence that causes the factfinder to believe that 'the truth of the facts asserted is highly probable.' " 288 Kan. at 505 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]). The evidence before the hearing panel establishes the charged misconduct of the respondent by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Carlos Dupree Romious, a/k/a D. Carlos Romious, be disbarred from the practice of law in the state of Kansas, effective on filing of this opinion, in accordance with Supreme Court Rule 203(a)(1) (2009 Kan. Ct. R. Annot. 272).

It Is Further Ordered that Carlos Dupree Romious comply with Supreme Court Rule 218 (2009 Kan. Ct. R. Annot. 361).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

PATRICIA MACKE DICK, District Judge, assigned.